1

2

3

4

5

6

The Honorable Tana Lin

7

8

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

9

CAROLYN SELLAR, an individual,

Plaintiff,

10

v.

11

WOODLAND PARK ZOOLOGICAL
SOCIETY, a Washington Nonprofit Corporation,

12

13

Defendant.

Case No. 2:23-cv-00627-TL

**DEFENDANT'S RESPONSE IN
OPPOSITION TO PLAINTIFF'S
MOTION TO REMAND**

14

15

## I.      INTRODUCTION

16

Defendant Woodland Park Zoological Society ("Defendant") removed this action to federal

17

court on April 28, 2023. Plaintiff Carolyn Sellar ("Plaintiff" or "Ms. Sellar") now moves this Court

18

to remand the case to King County Superior Court. The Court should deny Ms. Sellar's Motion

19

because federal question jurisdiction exists. Plaintiff's statutory claims require interpretation of the

20

applicable collective bargaining agreement ("CBA"), which implicates preemption under the Labor

21

Management Relations Act, 29 U.S.C. § 185.  Further, Plaintiff asserts a common law claim of

22

wrongful discharge in violation of public policy, alleging she was "unlawfully discharged by

23

Defendant," that requires CBA interpretation. Therefore, Defendant respectfully requests that the

24

Court deny Plaintiff's Motion to Remand.

25

## II.      PROCEDURAL POSTURE

26

On March 29, 2023, Plaintiff filed her Complaint for Damages in King County Superior

DEF. OPPOSITION TO PLAINTIFF'S MOTION TO REMAND - 1
CASE NO. 2:23-CV-00627-TL

LITTLER MENDELSON, P.C.
Attorneys at Law
One Union Square
600 University Street, Suite 3200
Seattle, Washington  98101.3122
206.623.3300

1   Court. ECF No. 1-2. On April 28, 2023, Defendant removed Plaintiff's Complaint under federal

2   question jurisdiction. ECF No. 1. Defendant asserted federal question jurisdiction exists on the basis

3   that Plaintiff's claims, in particular her claims arising out of alleged unlawful counseling/discipline,

4   the denial of her grievance, and her resignation, are preempted by federal law. ECF No. 1 at 2–8.[1]

5   Because Plaintiff's statutory claims are inextricably intertwined with the CBA governing her

6   employment and require interpretation of the CBA for determination of the claims, these claims are

7   preempted by the Labor Management Relations Act, 29 U.S.C. § 185 (hereinafter "LMRA").

8   Defendant asserted that federal question jurisdiction also exists because Plaintiff alleges a claim for

9   wrongful discharge in violation of public policy, requiring interpretation of the CBA's "just cause"

10  provision regarding terminations.

11      Defendant answered the Complaint on May 5, 2023.  ECF No. 7.  On May 11, 2023, Plaintiff

12  filed the instant Motion to Remand. ECF No. 9.

13      **III.    ALLEGATIONS IN PLAINTIFF'S COMPLAINT**

14      Plaintiff's Complaint arises out of her employment with and resignation from Defendant.

15  She alleges various broad-ranging factual claims, including but not limited to, alleged discriminatory

16  treatment involving her work schedule, work assignments, counseling/discipline, grievance

17  procedures, and her resignation. ECF No. 1-2, ¶¶ 31, 35, 42-48. Plaintiff's allegations, the sum of

18  which she alleges amount to unlawful termination, are intertwined with CBA issues, and include:

19      • "As part of her job as Animal Keeper, Ms. Sellar was often in daily interactions with the

20          Zoo's Orangutan population." *Id.* at ¶ 18.

21      • Defendant "unilaterally changed Ms. Sellar's work schedule, forcing her to work less

22          desirable days." *Id.* at ¶ 31.

23      • "Defendant notified Ms. Sellar that she was being removed from her regular animal area,

24          preventing her from continuing her work with the Zoo's Orangutan population." *Id.* at ¶

25  _____

26  [1] Defendant removed the case based on federal question jurisdiction under 28 U.S.C. § 1331, not diversity of citizenship. Accordingly, Defendant does not need to establish the complete diversity and amount in controversy requirements of 28 U.S.C. § 1332(a). As set forth below, federal question jurisdiction exists under 28 U.S.C. § 1331.

LITTLER MENDELSON, P.C.
Attorneys at Law
One Union Square
600 University Street, Suite 3200
Seattle, Washington  98101.3122
206.623.3300

1    35.

2    • "Ms. Sellar grieved Defendant's actions through her union." *Id.* at ¶ 42.[2]

3    • "During the grievance process, Ms. Sellar specifically alleged amongst other things, that

4      Defendant was discriminating and retaliating against her, creating a hostile work

5      environment, and interfering with her rights to protected medical leave." *Id.* at ¶ 43.

6    • "Defendant refused to reinstate Ms. Sellar to the Orangutan or Asian Primate unit." *Id.*

7      at ¶ 44.

8    • "Defendant also refused to assure Ms. Sellar that she would ever be allowed to work with

9      Orangutans again." *Id.* at ¶ 45.

10   • "On November 7, 2022, Defendant denied Ms. Sellar's grievance claiming that it 'lacked

11     merit.'" *Id.* at ¶ 46.

12   • "Ms. Sellar informed Defendant on November 29, 2022 that she was being forced to

13     resign due to the unlawful actions of [Defendant]." *Id.* at ¶ 48.

14                          **IV.    LEGAL ARGUMENT**

15   **A.    Legal Standard.**

16        On a motion to remand, the removing defendant bears the burden of establishing that removal

17   was proper by a preponderance of evidence. *McGee-Grant v. Am. Family Mut. Ins.*, No. C14-

18   1989RSM, 2015 U.S. Dist. LEXIS 196691, at *3–4 (W.D. Wash. Mar. 16, 2015) (citing *Gaus v.*

19   *Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992); *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398,

20   403-04 (9th Cir. 1996)). Once the defendant establishes removal was proper, a court "lacks

21   discretion to remand a case to the state court." *Id.* at *4 (citing *Carpenters S. Cal. Admin. Corp. v.*

22   *Majestic Hous.*, 743 F.2d 1341, 1343 (9th Cir. 1984), *abrogated in part on other grounds*, *Southern*

23   *Cal. IBEW-NECA Trust Funds v. Standard Indus. Elec. Co.*, 247 F.3d 920, 924 n.6 (9th Cir. 2001)).

24        For the reasons demonstrated below, Defendant has met its burden and demonstrated that it

25

26   [2] In this grievance, Plaintiff expressly alleges "unilateral changes to work unit designation in violation of, but not limited
     to, Article 7.1 of [the CBA]." ECF No. 1, 3:5-24.

DEF. OPPOSITION TO PLAINTIFF'S MOTION TO REMAND - 3
CASE NO. 2:23-CV-00627-TL

LITTLER MENDELSON, P.C.
Attorneys at Law
One Union Square
600 University Street, Suite 3200
Seattle, Washington  98101.3122
206.623.3300

1    properly removed this case to federal court on the basis of federal question jurisdiction.  The Court

2    should deny Plaintiff's Motion in full.

3    **B.       Defendant Properly Filed Its Notice of Removal in This Court.**

4            Defendant properly filed its Notice of Removal in this Court because the LMRA's

5    preemption of Plaintiff's state law claims confers original federal question jurisdiction. A defendant

6    "desiring to remove any civil action from a State court shall file in the district court of the

7    United States for the district and division within which such action is pending a notice of

8    removal." 28 U.S.C. § 1446(a). "Only ... actions that originally could have been filed in federal court

9    may be removed to federal court." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). Federal

10   question jurisdiction arises in cases of complete preemption, which applies to cases raising claims

11   preempted by Section 301(a) of the LMRA. *Audette v. Int'l Longshoremen's & Warehousemen's*

12   *Union*, 195 F.3d 1107, 1111 (9th Cir. 1999) ("a state common law claim will be converted into one

13   stating a federal claim where the preemptive force of a federal statute is so extraordinary that it

14   displaces any state law claim in the area"). "Once an area of state law has been completely pre-

15   empted, any claim purportedly based on that pre-empted state law is considered, from its inception,

16   a federal claim, and therefore arises under federal law." *Caterpillar Inc.*, 482 U.S. at 393.

17           Here, Plaintiff's assertion that Defendant must raise "preemption as a defense" in state court

18   has no bearing on Defendant's Notice of Removal. ECF No. 9, 3:7-23. For this inapplicable

19   proposition, Plaintiff cites to the district court's order in *Burkhardt v. Swedish Health Servs., Inc.*,

20   which acknowledges that "[r]emoval jurisdiction arises only if plaintiff could have asserted a federal

21   claim based on the allegations of her complaint." No. 2:17-CV-00350-RSL, 2017 WL 2116007, at

22   *3 (W.D. Wash. May 16, 2017). Federal courts properly consider whether Washington Law Against

23   Discrimination and state common law claims are "actions that originally could have been filed in

24   federal court." *Audette*, 195 F.3d at 1111, 1113; *Young v. Anthony's Fish Grottos, Inc.*, 830 F.2d

25   993, 1001-1002 (9th Cir. 1987). Therefore, Defendant properly filed its Notice of Removal in this

26   court because Plaintiff could have filed her claims in federal court.

LITTLER MENDELSON, P.C.
Attorneys at Law
One Union Square
600 University Street, Suite 3200
Seattle, Washington  98101.3122
206.623.3300

1      Plaintiff's citation to state law decisions finding no preemption are inapposite here, even if

2    Defendant were to pursue a defense of preemption in state court, because in each cited case the

3    interpretation of a CBA was not at issue.  *See* ECF No. 9 at 11 (citing *Hume v. American Disposal*

4    *Co.*, 124 Wn.2d 656, 665 (1994) (finding retaliation and wrongful discharge claims predicated on

5    requests for overtime pay were not preempted where the defendant did not raise that a collective

6    bargaining agreement was at issue); *Wilson v. City of Monroe*, 88 Wn. App. 113 (1997) (claims not

7    preempted where "the claims may be resolved without interpreting the CBA."); *Delahunty v.*

8    *Cahoon*, 66 Wn. App. 829, 838 (1992) (non-union employee's state discrimination claims not

9    preempted). Here, Plaintiff acknowledges that she is a union employee, subject to the terms of the

10   CBA, and the employment actions that form the basis of her claims require interpretation of the

11   CBA.

12   **C.      The "Artful Pleading" Doctrine Permits the Court to Investigate the True**

13   **Nature of a Plaintiff's Allegations.**

14      Plaintiff asserts that "[n]owhere on the face of the Complaint does she allege that Defendant's

15   [sic] violated the CBA." ECF No. 9, 7:5-6. However, that is not dispositive for purposes of

16   determining preemption under the LMRA. *Stallcop v. Kaiser Found. Hosps.*, 820 F.2d 1044, 1048

17   (9th Cir. 1987). Under the "artful pleading" doctrine, "the court may investigate the true nature of

18   the plaintiff's allegations; if the complaint actually raises a section 301 claim on the collective

19   bargaining agreement, even though it is framed under state law, the claim is preempted." *Id.*; *Lippitt*

20   *v. Raymond James Fin. Servs., Inc.*, 340 F.3d 1033, 1041 (9th Cir. 2003), *as amended* (Sept. 22,

21   2003) ("The artful pleading doctrine allows courts to 'delve beyond the face of the state court

22   complaint and find federal question jurisdiction' by 'recharacteriz[ing] a plaintiff's state-law claim

23   as a federal claim.'" (quoting *Precision Pay Phones v. Qwest Communications Corp.,* 210 F.Supp.2d

24   1106, 1112–13 (N.D. Cal. 2002))).

25      Here, while Plaintiff's Complaint frames her causes of action under state law, she repeatedly

26   references her union grievance, which reveals that the true nature of these claims relies on an alleged

LITTLER MENDELSON, P.C.
Attorneys at Law
One Union Square
600 University Street, Suite 3200
Seattle, Washington  98101.3122
206.623.3300

1  breach of the CBA that governed her employment. *See* ECF No. 1-2, ¶¶ 42, 43, 46. Specifically,

2  Plaintiff's Complaint acknowledges that she filed a grievance (*id.* at ¶ 42) and this grievance solely

3  complains about "unilateral changes to work unit designation in violation of, but not limited to,

4  Article 7.1 of [the CBA]." ECF No. 2-1, Ex. B. Plaintiff further complains that "Defendant denied

5  Ms. Sellar's grievance" and determined that it "lacked merit," which prompted her to resign. ECF

6  No. 1-2, ¶¶ 46-48. This undermines Plaintiff's attempt to avoid removal to this Court by asserting

7  that "Plaintiff does not allege that Defendant violated the CBA in this case." ECF No. 9, 2:11-13.

8      Because Plaintiff's Complaint cites Defendant's denial of her grievance and determination

9  that her grievance "lacked merit" as factors contributing to her alleged constructive discharge, this

10  case is distinguishable from *Downey v. Intalco Aluminum Corp.*, in which the plaintiff's complaint

11  "d[id] not disclose whether or how the alleged grievance was resolved." No. C05-2143C, 2006 WL

12  8454987, at *1, n.2 (W.D. Wash. May 3, 2006). Furthermore, in *Downey*, the "dispute ar[ose] from

13  Plaintiff's layoff," an affirmative adverse action alleged to be motivated by disability discrimination,

14  whereas here, Ms. Sellar alleges constructive discharge based on alleged defects in Defendant's

15  scheduling, assignment, and grievance actions, which are governed by the CBA. *Id.* at *1.

16      Plaintiff's new assertion that she "does not challenge Defendant's grievance decision"

17  appears to be an attempt to mirror *Downey*, but only serves as an admission that Defendant's

18  scheduling and unit designation changes were legitimate under the CBA. *Compare* ECF No. 1-2, ¶

19  46 *to* ECF No. 9, 6:16.  Because Plaintiff's Complaint not only cites her grievance alleging violations

20  of the CBA, but lists Defendant's denial of this grievance and finding that the grievance "lacked

21  merit" as the final affirmative act taken by Defendant before she decided to resign her employment,

22  the true nature of her claims is predicated on an alleged breach of the CBA. ECF No. 1-2, ¶¶ 46-48.

23      **D.    Federal Question Jurisdiction Exists Because Plaintiff's Claims Require**

24      **Interpreting the Applicable CBA, and as such, are Preempted by the LMRA.**

25      In her Motion to Remand, Plaintiff does not appear to dispute that the parties' relationship is

26  governed by a CBA. *See* ECF No. 9 at 3 (Plaintiff is "not even alleging here that Defendant did not

LITTLER MENDELSON, P.C.
Attorneys at Law
One Union Square
600 University Street, Suite 3200
Seattle, Washington  98101.3122
206.623.3300

have the power to take the adverse actions it took against her under the CBA"). Plaintiff's Complaint asserts that she filed a union grievance, that Defendant denied the grievance, that Defendant stated the grievance "lacked merit," and that she resigned shortly thereafter. ECF No. 1-2 at ¶¶ 42, 46.

Collective bargaining agreements are governed by Section 301 of the LMRA in order to promote uniform federal labor law. *Kobold v. Good Samaritan Reg'l Med. Ctr.*, 832 F.3d 1024, 1032 (9th Cir. 2016); *Teamsters Local 117 v. Davis Wire Corp.*, 187 F. Supp. 2d 1279, 1281 (W.D. Wash. 2001). The LMRA establishes federal jurisdiction for "[s]uits for violation of contracts between an employer and a labor organization." 28 U.S.C. § 185(a). Removal under Section 301 of the LMRA is appropriate if the evaluation of the state law claims is "inextricably intertwined" with consideration of the terms of a labor contract, *Hayden v. Reickerd*, 957 F.2d 1506, 1509 (9th Cir. 1991), or if the claims "are substantially dependent on analysis of a collective bargaining agreement." *Caterpillar, Inc*, 482 U.S. at 394.

Although the language of Section 301 references "suits for violation of contracts," the courts have construed Section 301 to preempt state law claims requiring <u>interpretation</u> of the CBA. *Burnside v Kiewit Pacific Corp.*, 491 F.3d 1053, 1058-1060 (9th Cir. 2007) (comprehensive summary of removal standards under Section 301); *see also Columbia Exp. Terminal v. Int'l Longshore & Warehouse Union*, 23 F.4th 836, 841 (9th Cir. 2022) (the Ninth Circuit has "applied the preemptive effect of § 301 to all 'state law claims grounded in the provisions of a CBA or requiring interpretation of a CBA.'" (quoting *Kobold*, 832 F.3d at 1032)).

Thus, Section 301 will completely preempt a plaintiff's state law claim where adjudication of the claim "necessarily requires the [C]ourt to interpret an existing provision of a [collective bargaining agreement] that can reasonably be said to be relevant to the resolution of the dispute." *Cramer v Consol. Freightways, Inc.*, 255 F.3d 683, 692-93 (9th Cir. 2001) (en banc); *see also Milne Emps. Ass'n v. Sun Carriers*, 960 F.2d 1401, 1411 (9th Cir. 1991) ("To determine whether a state law claim is completely preempted under section 301, the relevant inquiry is whether resolution of the claim requires the interpretation of a collective bargaining agreement.").

LITTLER MENDELSON, P.C.
Attorneys at Law
One Union Square
600 University Street, Suite 3200
Seattle, Washington  98101.3122
206.623.3300

At all relevant times, Defendant has been and is a nonprofit corporation engaged in commerce and in an industry affecting commerce within the meaning of Sections 2(2), 2(6), and 2(7) of the National Labor Relations Act ("NLRA"), 29 U.S.C. §§ 152(2), (6)-(7), and Section 301(a) of the LMRA, 29 U.S.C. § 185(a) (hereafter, "Section 301"). Here, the only contract between Plaintiff and Defendant is the CBA applicable to Plaintiff's employment. ECF No. 2-1, Ex. A. Plaintiff worked for Defendant as an Animal Keeper, which is a position covered by the CBA. *Id.* at p.8 (Article 1 – Recognition of Bargaining Unit"). Plaintiff's Complaint alleges she was constructively discharged and predicates this allegation on, *inter alia*, Defendant's refusal to assign her to the Orangutan or Asian Primates unit, refusal to promise her work with Orangutans, and denial of her grievance seeking the same. ECF No. 1-2 at ¶¶ 42-48.

The allegations in Plaintiff's Complaint require interpretation of the following CBA provisions to determine whether her discrimination, retaliation and interference claims have merit:

Article 7.1, providing a covered employee's rights regarding changes to work schedules and work unit designations, and under which she brought her grievance cited in the Complaint:

> The shifts, workdays and hours to which employees are assigned shall be stated on a monthly work schedule. Should it be necessary in the interest of efficient operations to establish schedules departing from the normal workday or workweek, the Zoo shall give notice to the affected employee as far in advance as is reasonably practicable, but not less than ten (10) calendar days prior to the effective date of the change except in unusual or emergency situations. The Zoo will not seek to change employee schedules for purposes of avoiding overtime.

> Unit designation will be provided on schedules not less than ten (10) calendar days for the appropriate job classifications. Changes however, may be made up to and including the day of work in order to meet animal welfare and business needs, with the agreement of the Employer and the Union.

ECF No. 2-1, Ex. A, pp. 5-6 ("7.1 – Schedules").

Article 2, providing for management's rights regarding the same, which management properly exercised to ensure coverage of the Orangutan unit while Plaintiff was on extended leave:

> Except as specifically limited by this Agreement, the Society reserves the sole right and authority to manage Woodland Park Zoo, including but not limited to the rights

DEF. OPPOSITION TO PLAINTIFF'S MOTION TO REMAND - 8
CASE NO. 2:23-CV-00627-TL

LITTLER MENDELSON, P.C.
Attorneys at Law
One Union Square
600 University Street, Suite 3200
Seattle, Washington  98101.3122
206.623.3300

1

2
to: . . . direct, plan and control zoo operations; determine the methods, means and number of personnel needed to carry out the zoo's mission; direct the work forces; establish and change work schedules and duties; hire, transfer and promote employees; [and] discipline or discharge non-probationary employees for just cause.

3

4
ECF No. 2-1, Ex. A, p.8 ("Article 2 – Rights of Management").

5
Article 13, providing the CBA's grievance procedure to which Plaintiff's grievance was

6
subject, including timing and writing requirements:

7
No grievance shall be entertained or processed unless it is submitted, in writing, within ten (10) days after the employee concerned becomes aware, or should have become aware through the use of reasonable diligence, of the occurrence of the event giving rise to the alleged grievance. If a grievance is not presented within ten (10) days as set forth above, it shall be waived.

8

9

10
….

11
**Step 1:**       Any employee or Council/Union Representative who has a grievance shall submit it in writing to the supervisor involved in the matter. The written grievance shall contain a statement of the facts, the provision or provision(s) of this Agreement that the Zoo is alleged to have violated, and the relief requested. The supervisor shall give their written response within seven (7) days after receipt of the grievance. The grievant and the Council/Union Representative shall be copied on the Step I response.

12

13

14

15
ECF No. 2-1, Ex. A, pp. 21-22 ("Article 13 – Grievance Procedure").

16
And Article 16.6, providing "Non-probationary employees covered by this Agreement may

17
not be suspended, demoted or terminated without just cause." ECF No. 2-1, Ex. A, p.19 ("Article

18
16.6 – Discipline and Discharge).

19
As discussed in the following sections, Plaintiff's claims are substantially dependent on

20
analyzing the CBA, and thus, are preempted by the LMRA.

21
1.       Plaintiff's Statutory Claims are Preempted by the LMRA.

22
Under the Washington Law Against Discrimination, RCW 49.60 *et seq.* ("WLAD"), an

23
employer may rebut a prima facie case of discrimination by producing a legitimate

24
nondiscriminatory reason for the employment decision. *Riehl v. Foodmaker, Inc.*, 152 Wn.2d 138,

25

26

DEF. OPPOSITION TO PLAINTIFF'S MOTION TO REMAND - 9
CASE NO. 2:23-CV-00627-TL

LITTLER MENDELSON, P.C.
Attorneys at Law
One Union Square
600 University Street, Suite 3200
Seattle, Washington  98101.3122
206.623.3300

150 (2004).[3] "Where a collective bargaining agreement governs whether the employer's proffered reason is legitimate and the case turns on that inquiry, the WLAD claim may be preempted." *Spurgeon v. Olympic Panel Prod. LLC*, No. C07-5436BHS, 2008 WL 2705136, at *3 (W.D. Wash. July 9, 2008) (citing *Audette*, 195 F.3d at 1113).

In *Audette*, the Ninth Circuit recognized that the LMRA does not preempt state law when the "factual inquiry [under the state law] does not turn on the meaning of any provision of a collective bargaining agreement," and held "resolution of the [state] discrimination and retaliation claim turns on defendants' offer of a 'legitimate nondiscriminatory reason' requiring interpretation of the collective bargaining agreement. . . . Accordingly, this claim is preempted." *Id.*; *see also Knowles v. Pac. Gas & Elec. Co.*, No. C 07-2284 CW, 2007 WL 9711965, at *7 (N.D. Cal. Nov. 29, 2007) (state discrimination claims preempted because, "[a]s in *Audette*, the resolution of Plaintiffs' discrimination claims turns on PG&E's offer of a 'legitimate nondiscriminatory reason' requiring interpretation of the CBA."); *Madison v. Motion Picture Set Painters & Sign Writers Local 729*, 132 F. Supp. 2d 1244, 1252-54 (C.D. Cal. 2000) (state discrimination claim preempted where plaintiff's prima facie case required reliance on the CBA and it was almost certain that defendant's articulated non-discriminatory reason for its actions would also require reliance on the CBA); *Lingle v. Norge Division of Magic Chef, Inc.*, 486 U.S. 399, 404, 407 (1988) (examining both the prima facie elements of plaintiff's retaliatory discharge claim and the employer's potential defenses to determine if they required interpretation of the CBA).

Here, Plaintiff's WLAD claims require analysis of whether Defendant's reasons for what she alleges are adverse actions were legitimate and nondiscriminatory under the CBA. Plaintiff alleges she was "forced to resign" after Defendant unilaterally changed her work schedule to days that she found less desirable, counseled/disciplined her, prevented her from working her preferred assignment with the Orangutan population, refused to promise her future work with Orangutans, and

---

[3] Under the WLAD, an employee bringing discrimination and retaliation claims maintains the burden of persuasion throughout the burden-shifting framework at summary judgment. *Riehl*, 152 Wn.2d at 150. !

LITTLER MENDELSON, P.C.
Attorneys at Law
One Union Square
600 University Street, Suite 3200
Seattle, Washington  98101.3122
206.623.3300

1    denied her grievance and stated it "lacked merit." ECF No. 1-2 at ¶¶ 31, 35, 40, 44-48.

2         Determination of Defendant's legitimate nondiscriminatory reasons for these actions

3    requires interpretation of the CBA, including Article 7.1, under which Plaintiff brought her grievance

4    to challenge changes to her work schedule and work unit assignment, and Article 2, addressing

5    management's rights to "determine the methods, means and number of personnel needed to carry

6    out the zoo's mission; direct the work forces; [and] establish and change work schedules and duties."

7    ECF No. 2-1, Ex. A, p.8. As Plaintiff concedes, she requested intermittent leave from May 2022 to

8    November 2022, a period spanning nearly six months. ECF No. 1-2 at ¶¶ 34-35. During this time,

9    management properly acted pursuant to its Article 2 rights to assign personnel to the Orangutan unit,

10   which Plaintiff was not available to work full-time. Even with Plaintiff's admission that she "does

11   not challenge Defendant's grievance decision," Defendant's legitimate and nondiscriminatory

12   reasons for Plaintiff's grieved actions are inextricably intertwined with the CBA. ECF No. 9, 6:16.

13        There is no way to disentangle Plaintiff's allegations from the CBA provisions governing the

14   respective rights of her and management regarding her work assignments, particularly as, in a

15   WLAD discrimination claim, "[a]n actionable adverse employment action must involve a change in

16   employment conditions that is more than an 'inconvenience or alteration of job responsibilities,'

17   such as reducing an employee's workload and pay." *Tyner v. State*, 137 Wn. App. 545, 564 (2007)

18   (quoting *Kirby v. City of Tacoma*, 124 Wn. App. 454, 465 (2004)). In an "adverse transfer" scenario

19   in which "both positions did the same work for the same pay and fell within the same union contract

20   classification," no adverse action is stated unless the employee can show loss of tangible benefits.

21   *See Alonso v. Qwest Commc'ns Co., LLC*, 178 Wn. App. 734, 747 (2013) ("if [the plaintiff's] newer

22   van, cellular phone, and preference for workplace stations were tied to his [former preferred] position

23   . . . he could not prove an adverse action against him for loss of these benefits when he was

24   reassigned.").

25        Plaintiff's Complaint alleges "Defendant refused to reinstate Ms. Sellar to the Orangutan or

26   Asian Primate unit" and "refused to assure Ms. Sellar that she would ever be allowed to work with

DEF. OPPOSITION TO PLAINTIFF'S MOTION TO REMAND - 11
CASE NO. 2:23-CV-00627-TL

LITTLER MENDELSON, P.C.
Attorneys at Law
One Union Square
600 University Street, Suite 3200
Seattle, Washington  98101.3122
206.623.3300

1    Orangutans again." ECF No. 1-2, ¶¶ 44-45. Plaintiff does not allege that her Animal Keeper position

2    designation was changed, any changes to her workload or pay, or that there were any tangible

3    benefits associated with the Orangutan or Asian Primates unit. Plaintiff therefore cannot state any

4    adverse action regarding Defendant's refusal to assign her to the Orangutan or Asian Primate unit or

5    to assure her future work therein without reference to the CBA, revealing that the true nature of these

6    allegations is a violation of the CBA, which Plaintiff's grievance expressly states.

7          Plaintiff's case is distinguished from *Downey* in that the adverse actions stated by the plaintiff

8    in *Downey* were required medical examinations and layoff, which are independently actionable

9    under the WLAD. No. C05-2143C, 2006 WL 8454987, at *3. Here, Plaintiff's scheduling and work

10   assignment grievance, which had no impact on her workload or pay, are not adverse actions under a

11   WLAD discrimination cause of action, but alleged violations of the CBA, upon which Plaintiff

12   predicates her alleged constructive discharge. As the WLAD confers no right to work in Defendant's

13   Orangutan or Asian Primate unit or to be assured future work therein, and denial of these preferences

14   are not adverse actions under the WLAD, interpretation of the CBA is required to determine these

15   claims. *See Rorebeck v. Franciscan Health*, No. 3:18-CV-05423, 2019 WL 1436661, at *5 (W.D.

16   Wash. Apr. 1, 2019) (WLAD claims preempted where "the WLAD claims cannot be evaluated

17   without reference to and application of the CBA"); *Phelps v. Multicare Health Sys.*, No. C15-5120

18   RBL, 2015 WL 2127690, at *1–*2 (W.D. Wash. May 6, 2015) ("The terms of the collective

19   bargaining agreement regulate the terms, conditions and procedures of [Plaintiff]'s employment, and

20   her WLAD claims are thus pre-empted by § 301 of the LMRA" despite the plaintiff "arguing that

21   her complaint alleges only plain-vanilla WLAD claims that do not facially or actually implicate §

22   301 of the LRMA.").

23         Because Plaintiff predicates her interference claim under the Washington Paid Family and

24   Medical Leave Act, Ch. 50A RCW ("PFMLA") on the same unit designation change removing her

25   from Orangutans as discussed above, that claims is preempted for similar reasons. ECF No. 1-2, ¶

26   35. Management's rights under Article 2 of the CBA to control zoo operations and establish and

LITTLER MENDELSON, P.C.
Attorneys at Law
One Union Square
600 University Street, Suite 3200
Seattle, Washington  98101.3122
206.623.3300

1   change work schedules and duties while Plaintiff was on leave are inextricably intertwined with this

2   cause of action and it is preempted.

3       Under Plaintiff's constructive discharge theory, she "must prove that [her employer]

4   deliberately made working conditions intolerable for her" and "that a 'reasonable person in her

5   position' would be forced to quit." ECF No. 1-2, ¶ 48; *Haubry v. Snow*, 106 Wn. App. 666, 677

6   (2001). The Court must interpret the CBA to determine whether Defendant acted within its Article

7   2 management rights regarding scheduling and unit designation changes to address whether there

8   were intolerable working conditions amounting to unlawful discharge without "just cause." A

9   "reasonable person in [Plaintiff's] position" necessarily means one covered by the CBA, and

10  therefore, whether such a person would feel compelled to resign must be assessed with reference to

11  the CBA's rights and provisions. Plaintiff's constructive discharge claim is therefore inextricably

12  intertwined with the CBA provisions governing her position and whether she was compelled to

13  resign by alleged violations thereof addressed in her grievance, and the denial of her grievance.

14      In addition, the allegations in Plaintiff's Complaint that do not directly address the Article

15  7.1 issues raised in her grievance are inextricably intertwined with the CBA. The CBA governs

16  hiring for vacant positions and provides management the right to discipline an employee covered by

17  the CBA for "just cause." *See* ECF No. 2-1, Ex. A, p.8 ("Article 2 – Rights of Management"); pp.

18  16-17 ("Article 9 – Vacancies"); p. 26 ("16.6 – Discipline and Discharge"). Plaintiff's allegations

19  that she was denied a promotion (ECF No. 1-2, ¶¶ 26-27), and that she was unlawfully

20  counseled/disciplined (*id.* at ¶ 40), require interpretation of these provisions.

21      Finally, Plaintiff alleges that "[d]uring the grievance process", she raised concerns regarding

22  discrimination, retaliation, and interference with protected medical leave, and that Defendant denied

23  her grievance. ECF No. 1-2 at ¶ ¶ 43, 46. Under Article 3 of the CBA, Defendant "shall not

24  unlawfully discriminate against any employee by reason of protected class." ECF No. 2-1, Ex. A,

25  p.9 ("Article 3 – Non-Discrimination"). To determine whether Defendant's denial of Plaintiff's

26  grievance constituted actionable discrimination or retaliation, the CBA terms regarding grievance

LITTLER MENDELSON, P.C.
Attorneys at Law
One Union Square
600 University Street, Suite 3200
Seattle, Washington  98101.3122
206.623.3300

procedure must be interpreted to assess whether the grievance was lawfully denied due to timeliness and writing requirements. *See* ECF No. 2-1, Ex. A, pp. 21-22 ("Article 13 – Grievance Procedure"); *Rorebeck*, No. 3:18-CV-05423, 2019 WL 1436661, at *4 (WLAD claims preempted where "The CBA specifically addresses, and prohibits, discrimination" and permitted "termination only for cause."). Plaintiff's Complaint raises the grievance procedure issue in alleging that she raised discrimination, retaliation, and interference concerns as part of the grievance process and then faulting Defendant for denying her grievance. Defendant is entitled to advance legitimate reasons for the denial of Plaintiff's grievance based on the CBA, and this requires interpretation of the CBA.

For the foregoing reasons, Plaintiff's WLAD and PFMLA claims are preempted by the LMRA.

> 2. Plaintiff's Wrongful Termination in Violation of Public Policy Claims are Preempted by the LMRA.

Plaintiff's claim of wrongful termination in violation of public policy is inextricably intertwined with the CBA between the parties and is therefore subject to LMRA preemption. "Washington law does not recognize a cause of action for constructive discharge; rather the law recognizes an action for wrongful discharge which may be either express or constructive." *Snyder v. Med. Serv. Corp. of E. Washington*, 145 Wn.2d 233, 238 (2001).

Plaintiff's claim for wrongful termination in violation of public policy requires interpretation of the CBA because she alleges "Defendant unlawfully terminated Plaintiff in violation of Washington public policy" and the CBA requires that "[n]on-probationary employees covered by this Agreement may not be suspended, demoted or terminated without just cause." ECF No. 1-2, ¶ 55; No. 2-1, p. 26 ("16.6.1 – Just Cause"). Defendant's basis for allegedly "unlawfully terminat[ing]" Plaintiff's employment is therefore governed by Article 16.6.1 the CBA.

In requiring "just cause" for termination, the CBA provides "the same or greater protection of job security that state tort law seeks to provide for nonunionized employees; accordingly federal law preempts state law." *Stallcop*, 820 F.2d at 1049 (quoting *Olguin v. Inspiration Cons. Copper*

LITTLER MENDELSON, P.C.
Attorneys at Law
One Union Square
600 University Street, Suite 3200
Seattle, Washington  98101.3122
206.623.3300

*Co.*, 740 F.2d 1468, 1474 (9th Cir. 1984), *overruled on other grounds, Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202 (1985)). Plaintiff's argument that she "does not allege that her termination had anything to do with the CBA at all" does not distinguish this case from *Stallcop*, in which the plaintiff similarly "contend[ed] that the wrongful termination alleged does not involve the interpretation of the collective bargaining agreement," and the court nonetheless found the claim preempted. ECF No. 9, 11:12-14; *Stallcop*, 820 F.2d at 1048; *see also Kobold*, 832 F.3d at 1046-47 (upholding arbitrator's interpretation of a CBA's "just cause" provision that relied on the "industrial common law"—the "practices of the industry and the shop").

Determining whether Plaintiff was wrongfully discharged through constructive means requires interpretation of the CBA to determine whether Defendant's changes to Plaintiff's work schedule and work unit, alleged counseling and/or discipline, and denial of Plaintiff's grievance, amounted to discharging her without "just cause." To the extent Plaintiff also predicates her wrongful discharge claim on her allegations concerning failure to promote, this allegation likewise requires interpretation of the CBA. ECF No. 1-2, ¶ 27. Adjudicating whether, and to what extent, such hiring decision was unlawful requires interpretation of the CBA, because Defendant's duty with respect to considering internal candidates for vacancies is governed by the terms of the CBA. ECF No. 2-1, Ex. A at pp. 16-17 ("Article 9 – Vacancies").

Ultimately, Plaintiff's allegation of wrongful discharge requires interpretation of the CBA's "just cause" provision. The "just cause" provision must be interpreted and applied to Plaintiff's wrongful discharge claim because this claim alleges discharge, discharge requires "just cause" under the CBA, and no other alleged adverse actions may be predicated on a violation of public policy. *Roberts v. Dudley*, 140 Wn. 2d 58, 76 (2000) ("the tort of wrongful discharge in violation of public policy clearly applies only in a situation where an employee has been discharged."); *Kobold*, 832 F.3d at 1046-47. Thus, Plaintiff's wrongful discharge claim cannot be resolved without substantial reliance upon and interpretation of the CBA. *See Jackson v. Southern California Gas Co.*, 881 F.2d 638, 643 (9th Cir. 1989) (claim of wrongful discharge is preempted "if it is bound up with

LITTLER MENDELSON, P.C.
Attorneys at Law
One Union Square
600 University Street, Suite 3200
Seattle, Washington  98101.3122
206.623.3300

interpretation of the collective bargaining agreement and furthers no state policy independent of the employment relationship."); *Young*, 830 F.2d at 1002 (common law wrongful discharge claim preempted where "no state public policy transcending the employment relationship protects [the plaintiff's] actions"); *Evangelista v. Inlandboatmen's Union*, 777 F.2d 1390, 1401 (9th Cir. 1985) (wrongful discharge claim preempted where the "claim is completely dependent upon resolution of a question of contractual interpretation" regarding whether a change in seniority status was authorized while the employee was on a leave of absence.).

Plaintiff's citation to *Wilson v. City of Monroe*, is inapplicable here because, in that case, the court found that the claims could "be resolved without interpreting the CBA." 88 Wn. App. at 119. Here, not only must the CBA's "just cause" provision be interpreted to determine whether a wrongful discharge occurred, but each challenged action, including scheduling and unit assignment changes, counseling/discipline, and grievance procedure, are inextricably intertwined with the CBA. Therefore, Plaintiff's Complaint was properly removed to this Court in accordance with the provisions of 28 U.S.C. § 1441(a).

### E.    Supplemental Jurisdiction Exists Over Any of Plaintiff's State Law Claims Not Subject to Federal Question Jurisdiction.

As Defendant asserted in its Notice of Removal, to the extent this Court does not have original jurisdiction over one or more of Plaintiff's claims, supplemental jurisdiction exists under 28 U.S.C. § 1367.  Section 1367(a) provides the following:

> . . . [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

A court may exercise supplemental jurisdiction after considering the following four factors set forth in 28 U.S.C. § 1367(c): (1) the convenience and fairness to the litigation; (2) the existence of issues of federal policy; (3) issues of comity; and (4) considerations of judicial economy.  *EEOC v. Evans Fruit Co.*, No. CV-10-3033-LRS, 2013 U.S. Dist. LEXIS40842 at *3 (E.D. Wash. Mar. 22,

LITTLER MENDELSON, P.C.
Attorneys at Law
One Union Square
600 University Street, Suite 3200
Seattle, Washington  98101.3122
206.623.3300

2013) (citing *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726–27 (1966); *Acri v. Varian Assocs.*, 114 F.3d 999, 1001 (9th Cir. 1997) (en banc) (exercising supplemental jurisdiction after rejecting plaintiff's argument that such claims raised novel and complex state law issues and that judicial economy weighed against declining jurisdiction).

In particular, while the exact public policy upon which Plaintiff brings her common law wrongful discharge claim is not expressly stated in the Complaint, presumably she predicates this claim on the public policies contained in each statute she has cited, as well as the CBA-governed grievance that was denied, giving rise to her resignation. In such a scenario, the wrongful discharge claim encompasses the same factual matter as each and every one of her other claims. It is therefore evident that any state law allegations that may remain, apart from those subject to LMRA preemption, form the same case and controversy as her claims that do give rise to LMRA preemption. Ms. Sellar's claims involve a common nucleus of operative facts regarding certain Defendant policies, the reasons Ms. Sellar's schedule and unit assignment were changed, Ms. Sellar's grievance and Defendant's denial of the grievance, and the reasons for Ms. Sellar's alleged discharge.

Any claims subject to supplemental jurisdiction strongly favor this Court's exercise of jurisdiction, as they are not particularly complex or novel, they do not substantially predominate over Ms. Sellar's claims that are subject to federal original jurisdiction, and judicial economy favors adjudicating these claims together. *See, e.g., Osborn v. Haley*, 549 U.S. 225, 245 (2007)*; compare with Hill v. Builder Servs. Grp., Inc.*, No. C20-1478-JCC, 2021 U.S. Dist. LEXIS 168033, at *4 (W.D. Wash. Sep. 3, 2021) (declining to exercise supplemental jurisdiction as there was no evidentiary overlap between claims).

Accordingly, even if any state law claims do not independently invoke original federal jurisdiction, this Court may exercise supplemental jurisdiction over them, and Defendant's removal is proper.

LITTLER MENDELSON, P.C.
Attorneys at Law
One Union Square
600 University Street, Suite 3200
Seattle, Washington  98101.3122
206.623.3300

**F.** **Because Defendant Has an Objectively Reasonable Basis for Removing This Action, Plaintiff Is Not Entitled To Recover Attorney's Fees.**

Lastly, as Defendant's removal is meritorious and based on reasonable grounds, Plaintiff's request for attorney's fees should be denied. The U.S. Supreme Court has held that "[a]bsent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). "Conversely, when an objectively reasonable basis exists, fees should be denied." *Id.* Even where a plaintiff obtains remand of a case, there is no presumption favoring an award of fees. *Id.* at 140 ("there is no reason to suppose Congress meant to confer a right to remove, while at the same time discouraging its exercise in all but obvious cases."). Defendant relies chiefly on cases in which the courts denied attorney's fees. *See Burkhardt*, No. 2:17-CV-00350-RSL, 2017 WL 2116007, at *5 *Downey*, No. C05-2143C, 2006 WL 8454987, at *4 (both denying fee awards).

To support her fee request, Plaintiff oddly alleges in emphasized text that Defendant does not identify the CBA terms that require interpretation. ECF No. 9, 14:4-6. This is plainly inaccurate. *See* ECF No. 1 at pp. 3, 4, 7 (citing ECF No. 2-1, Ex. A [CBA] at p.8 (Articles 1& 2), pp. 3-14 (Article 7.1), pp. 16-17 (Article 9), pp. 21-22 (Article 13), and p.26 (Article 16.6)). Defendant removed this case on the reasonable grounds provided by Plaintiff's Complaint, in which she repeatedly cites her union grievance and predicates her constructive discharge allegations on the issues grieved and the denial of the grievance. Even if the Court finds that Plaintiff's allegations regarding her grievance do not inextricably intertwine the CBA with her causes of action, attorney's fees should be denied.

## V.    CONCLUSION

This Court has original jurisdiction over Ms. Sellar's claims on the basis of federal question jurisdiction, and Defendant has established that it properly removed this case by a preponderance of the evidence.  Defendant respectfully requests that this Court deny Plaintiff's Motion to Remand.

LITTLER MENDELSON, P.C.
Attorneys at Law
One Union Square
600 University Street, Suite 3200
Seattle, Washington  98101.3122
206.623.3300

1

Dated: May 30, 2023

2

3
I certify that this memorandum contains 6228
words, in compliance with the Local Civil
Rules.

4

5
                                            /s/ Anne E. Reuben
                                            Ryan P. Hammond, WSBA #38888

6
                                            rhammond@littler.com
                                            Anne E. Reuben, WSBA #53299

7
                                            areuben@littler.com
                                            Jordan T. Wada, WSBA #54937

8
                                            jwada@littler.com
                                            LITTLER MENDELSON, P.C.

9
                                            One Union Square
                                            600 University Street, Suite 3200

10
                                            Seattle, WA 98101.3122
                                            Phone: 206.623.3300
                                            Fax:    206.447.6965

11

12
                                            Attorneys for Defendant
                                            WOODLAND PARK ZOOLOGICAL SOCIETY

13

14

15

16

17

18

19

20

21

22

23

24

25

26

DEF. OPPOSITION TO PLAINTIFF'S MOTION TO REMAND - 19
CASE NO. 2:23-CV-00627-TL

LITTLER MENDELSON, P.C.
Attorneys at Law
One Union Square
600 University Street, Suite 3200
Seattle, Washington  98101.3122
206.623.3300

1

## CERTIFICATE OF SERVICE

2      I am a resident of the State of Washington. I am over the age of eighteen years and not a

3  party to the within-entitled action. My business address is One Union Square, 600 University Street,

4  Suite 3200, Seattle, Washington 98101.  I hereby certify that on May 30, 2023, I electronically filed

5  the foregoing document with the Clerk of the Court using the CM/ECF system, which will send

6  notification of such filing to the following:

7  **Attorneys for Plaintiff**

8  Richard E. Goldsworthy, WSBA #40684
   Robin J. Shishido, WSBA #45926
9  Shishido Taren Goldsworthy, PLLC
   705 Second Ave., Suite 1500
10 Seattle, WA 98104
   Tel: (206) 622-1604
11 rgoldsworthy@shishidotaren.com
   rshishido@shishidotaren.com
12

13      I certify under penalty of perjury under the laws of the United States and of the State of

14 Washington that the foregoing is true and correct.

15      Executed on May 30, 2023, at Seattle, Washington.

16

17                                    /s/ *Karen Fiumano Yun*

18                                    Karen Fiumano Yun
                                      kfiumano@littler.com
19 4891-4181-8724.5 / 069466-1037    **LITTLER MENDELSON, P.C.**

20

21

22

23

24

25

26

DEF. OPPOSITION TO PLAINTIFF'S MOTION TO REMAND - 20
CASE NO. 2:23-CV-00627-TL

LITTLER MENDELSON, P.C.
Attorneys at Law
One Union Square
600 University Street, Suite 3200
Seattle, Washington  98101.3122
206.623.3300