UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CAROLYN SELLAR,<br><br>               Plaintiff,<br>   v.<br><br>WOODLAND PARK ZOOLOGICAL SOCIETY,<br><br>               Defendant. | CASE NO. 2:23-cv-00627-TL<br><br>ORDER OF REMAND |

This is an employment discrimination case brought under various Washington state laws. This matter is before the Court on Plaintiff's motion to remand (Dkt. No. 9). Having considered the relevant record, the Court GRANTS the motion to remand and REMANDS this matter to King County Superior Court without an award of attorney fees and costs.

## I. BACKGROUND

Plaintiff Carolyn Sellar, an Asian woman and former Animal Keeper at the Woodland Park Zoo in Seattle, WA, brings suit against Defendant Woodland Park Zoological Society (the "Zoo"), her former employer, asserting race-based discrimination and retaliation. Dkt. No. 1-2 at

ORDER OF REMAND - 1

3–4 (complaint). Ms. Sellar alleges that her complaints and advocacy regarding diversity-related issues at the Zoo resulted in her being denied a promotion to Lead Animal Keeper, being warned by a supervisor to stop voicing concerns about diversity at the Zoo, retaliatory action in the form of undesirable changes to her work schedule and assignments (part of which occurred during Ms. Sellar's medical leave on an intermittent basis), and constructive discharge when she felt "forced to resign." *Id.* at 4–7. Ms. Sellar, a member of a union with a collective bargaining agreement ("CBA") governing her employment with the Zoo, pursued a grievance through her union. *Id.* at 7. The Zoo denied her grievance. *Id.*

Ms. Sellar filed this action against the Zoo in King County Superior Court, asserting claims for: (1) discrimination, hostile work environment, and retaliation under the Washington Law Against Discrimination ("WLAD"), RCW 49.60 *et seq.*; (2) wrongful discharge in violation of Washington public policy; and (3) violations of the Washington Paid Family and Medical Leave Act ("PFMLA"), RCW 50A *et seq.* Dkt. No. 1-2 at 3 (complaint). The Zoo removed to this Court. Dkt. No. 1.

Ms. Sellar moves to remand this matter back to state court (Dkt. Nos. 9, 13), which the Zoo opposes (Dkt. No. 12).[1]

## II. LEGAL STANDARD

Federal courts are courts of limited jurisdiction. *E.g.*, *Hansen v. Grp. Health Coop.*, 902 F.3d 1051, 1056 (9th Cir. 2018). As a general matter, federal courts have jurisdiction over all

---

[1] Ms. Sellar neglected to include a certification of conferral with the Zoo before filing her motion, as is required by this Court's chambers procedures. *See* Judge Tana Lin, Standing Order for All Civil Cases § II.D, https://www.wawd.uscourts.gov/sites/wawd/files/LinStandingOrderreCivilCases_0.pdf (last updated June 16, 2023). The Court may summarily deny motions that do not meet this requirement. However, the Court will waive that requirement here, where the Zoo had already removed this case, indicating its intention to seek federal jurisdiction and oppose any attempt to remand. Further, the Parties will no longer be before the Court given that this case is being remanded, making it less important to enforce the Court's rules for future compliance.

ORDER OF REMAND - 2

cases "arising under" federal law ("federal question jurisdiction") and certain cases involving citizens of different states ("diversity jurisdiction"). *Id.*; *see also* 28 U.S.C. §§ 1331, 1332. If neither basis for federal jurisdiction exists, a case may ordinarily only be brought in state court. *Hansen*, 902 F.3d at 1056.

A defendant may remove an action filed in state court to a federal district court if the federal court has original jurisdiction over the action. 28 U.S.C. § 1441(a); *see also Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) ("Only state-court actions that originally could have been filed in federal court may be removed to federal court by the defendant."). There is a strong presumption against removal. *E.g.*, *Hansen*, 902 F.3d at 1057. Any doubts regarding the right to removal must be resolved in favor of remanding back to state court. *Matheson v. Progressive Specialty Ins. Co.*, 319 F. 3d 1089, 1090 (9th Cir. 2003). The party seeking removal bears the burden of establishing federal jurisdiction. *E.g.*, *Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975, 978 (9th Cir. 2013). "If a district court determines at any time that less than a preponderance of the evidence supports . . . removal, it must remand the action to the state court." *Hansen*, 902 F.3d at 1057.

### III. DISCUSSION

The Zoo argues that this Court has federal question jurisdiction over this matter because Ms. Sellar's claims, which arise under Washington state law, are completely preempted by Section 301(a) of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185. Dkt. No. 1 at 4–5 (notice of removal); Dkt. No. 12 at 6–9 (opposition to motion to remand). Ms. Sellar argues that her claims are independent of the governing CBA in this case and therefore are not preempted by the LMRA. Dkt. No. 9 at 2. The Parties do not dispute that Ms. Sellar's employment with the Zoo was governed by a CBA and that she, through her union, underwent a grievance process under the CBA that resulted in an unfavorable decision for Ms. Sellar. *See*

Dkt. No. 1-2 at 7 (grievance); Dkt. No. 9 at 10 (noting Zoo's rights under CBA); Dkt. No. 12 at 6–7 (emphasizing references to grievance in complaint).

**A.     Removal**

    **1.     Complete Preemption Standard**

To successfully remove a case based on federal question jurisdiction, a federal claim must be presented on the face of the well-pleaded complaint. *Hansen*, 902 F.3d at 1057 (quoting *Caterpillar Inc.*, 482 U.S. at 392). "Th[is] rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." *Caterpillar Inc.*, 482 U.S. at 392–93. In other words, a plaintiff "may by the allegations of his complaint determine the status with respect to removability of a case." *Id.* at 392 n.7 (quoting *Great N. Ry. Co. v. Alexander*, 246 U.S. 276, 282 (1918)). Further, an anticipated federal defense cannot form the basis of removal. *E.g.*, *Hansen*, 902 F.3d at 1057.

One exception to this rule, however, is *complete* preemption. If the preemptive force of a federal statute is "so extraordinary that it converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule," the claim is considered to necessarily "arise under" federal law and therefore invoke federal question jurisdiction. *Caterpillar Inc.*, 482 U.S. at 393 (internal quotation marks omitted) (quoting *Metropolitan Life Ins. Co.*, 481 U.S. 58, 65 (1987)); *Hansen*, 902 F.3d at 1058 ("Once completely preempted, a state-law claim ceases to exist."). In short, a plaintiff may not engage in "artful pleading" by disguising a federal claim to avoid removal. *See, e.g.*, *City of Oakland v. BP PLC*, 969 F.3d 895, 905 (9th Cir. 2020). "To have this effect, a federal statute must 'provide[ ] the exclusive cause of action for the claim asserted and also set forth procedures and remedies governing that cause of action.'" *Id.* (alteration in original) (quoting *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1 (2003)).

### 2. Section 301 Preemption

The Supreme Court of the United States has only recognized three federal statutes that completely preempt a state law claim. *Id.* Among them is Section 301 of the LMRA, which provides:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a). The Supreme Court has construed Section 301 as showcasing congressional intent to establish a body of federal common law governing disputes arising out of labor contracts and to ensure agreements to arbitrate grievances are enforced. *Kobold v. Good Samaritan Reg'l Med. Ctr.*, 832 F.3d 1024, 1032 (9th Cir. 2016) (first quoting *Textile Workers Union of Am. v. Lincoln Mills of Ala.*, 353 U.S. 448, 451 (1957); and then quoting *Livadas v. Bradshaw*, 512 U.S. 107, 122 (1994)). Accordingly, Section 301 completely preempts any state law claim that is either created by a CBA or is otherwise "substantially dependent" on the analysis of a CBA. *Caterpillar Inc.*, 482 U.S. at 394 (quoting *Elec. Workers v. Hechler*, 481 U.S. 851, 859 n.3 (1987)). This results in a two-step analysis for examining a state law claim for Section 301 preemption.

First, the court examines whether the claim involves a right that exists solely as a result of the CBA. *Curtis v. Irwin Indus., Inc.*, 913 F.3d 1146, 1152–53 (9th Cir. 2019) (quoting *Kobold*, 832 F.3d at 1032) (describing the "two-step test"). If yes, then the claim is preempted by Section 301, and the inquiry stops there. *Id.* (quoting *Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053, 1059 (9th Cir. 2007)). A breach of contract claim is the "paradigmatic example" of such a preempted claim. *Alaska Airlines Inc. v. Schurke*, 898 F.3d 904, 921 & n.12 (9th Cir. 2018); *see*

*also Chmiel v. Beverly Wilshire Hotel Co.*, 873 F.2d 1283, 1285–86 (9th Cir. 1989) (holding breach of contract, implied covenant of good faith and fair dealing, and intentional infliction of emotional distress claims were preempted by Section 301, but not claim of age discrimination for wrongful discharge under California public policy).[2]

Second, the court examines whether the claim is "substantially dependent" on a CBA. *Curtis*, 913 F.3d at 1153 (quoting *Kobold*, 832 F.3d at 1033). A claim is "substantially dependent" on a CBA if the claim requires "interpreting" the CBA; but if the claim can be resolved by simply "looking to" the CBA, the claim is independent of the CBA. *Id.*; accord *Burnside*, 491 F.3d at 1059–60; *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 410 (1988).

"Interpretation" of a CBA is defined narrowly. *Garcia v. Serv. Emps. Int'l Union*, 993 F.3d 757, 765 (9th Cir. 2021). Merely considering, referring to, or otherwise consulting the language of a CBA is not sufficient to trigger preemption. *Id.* There must be an active dispute over the meaning of the CBA's terms. *Curtis*, 913 F.3d at 1153 (quoting *Schurke*, 898 F.3d at 921); *see also Garcia*, 993 F.3d at 765 ("There is not substantial dependence when the meaning of contract terms is not the subject of dispute, and the bare fact that a [labor contract] will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished." (alteration in original) (internal quotation marks omitted) (quoting *Livadas*, 512 U.S. at 124)). "Accordingly, a state law claim may avoid preemption if it does not raise questions about the scope, meaning, or application of the CBA." *Curtis*, 913 F.3d at 1153; *see, e.g.*, *Burnside*, 491 F.3d at 1071–74 (finding plaintiff's action for compensation for compulsory travel

---

[2] However, a breach of contract claim based on a separate individual employment contract, even where there is a governing CBA, can nonetheless stand on its own, provided that the claim is not otherwise "substantially dependent" on the CBA. *See Caterpillar Inc.*, 482 U.S. at 396–97.

time was not preempted because claims could be resolved by merely "looking to" the CBA but without interpreting it).

In short, "not every dispute concerning employment, or tangentially involving a provision of a [CBA], is pre-empted by [Section] 301 or other provisions of the federal labor law." *Caterpillar Inc.*, 482 U.S. at 396 n.10 (internal quotation marks omitted) (quoting *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 211 (1985)). Merely asserting "a hypothetical connection between the claim and the terms of the CBA is not enough to preempt the claim" under Section 301. *Cramer v. Consol. Freightways Inc.*, 255 F.3d 683, 691–92 (9th Cir. 2001) (en banc). In particular, the Ninth Circuit has repeatedly emphasized that Section 301 does not preempt "nonnegotiable rights conferred on individual employees as a matter of state law." *Curtis*, 913 F.3d at 1152 (quoting *Livadas*, 512 U.S. at 123); *Valles v. Ivy Hill Corp.*, 410 F.3d 1071, 1076 (9th Cir. 2005). Even if there is a CBA governing the employment,

> [s]etting minimum wages, regulating work hours and pay periods, requiring paid and unpaid leave, protecting worker safety, prohibiting discrimination in employment, and establishing other worker rights remain[ ] well within the traditional police power of the states, and claims alleging violations of such protections will not necessarily be preempted, even when the plaintiff is covered by a CBA.

*Curtis*, 913 F.3d at 1152 (first alteration in original) (internal quotation marks omitted) (quoting *Schurke*, 898 F.3d at 919–20).

### 3. Application of the Complete Preemption Doctrine to Ms. Sellar's Claims

Ms. Sellar asserts claims of discrimination, retaliation, and hostile work environment in violation of the WLAD, wrongful discharge in violation of Washington public policy, and violations of the PFMLA. Dkt. No. 1-2 at 3 (complaint). The Court must examine whether these claims are completely preempted by Section 301.

First, the Court looks to whether Ms. Sellar's claims involve a right that exists solely due to the CBA. The Zoo argues that these claims are actually claims for breach of the CBA because she is essentially challenging the Zoo's resolution of the CBA grievance process. Dkt. No. 12 at 5–6 ("[S]he repeatedly references her union grievance, which reveals that the true nature of these claims relies on an alleged breach of the CBA that governed her employment."); *id.* at 6 ("[T]he true nature of her claims is predicated on an alleged breach of the CBA.").

The Court disagrees. The Court struggles to understand the Zoo's argument that *referencing* the grievance process means that Ms. Sellar is alleging that a *breach* of the CBA occurred. In any case, Ms. Sellar does not allege—explicitly or implicitly—a violation of the terms of the CBA. *See, e.g.*, *Matson v. United Parcel Serv., Inc.*, 840 F.3d 1126, 1133 (9th Cir. 2016) ("[W]e reject [defendant']s suggestion that [plaintiff's hostile work environment] claim is nothing more than a repackaged 'contractual dispute' over the assignment of extra work."). Ms. Sellar's asserted causes of action are separate and distinct from the CBA. *Cf. Milne Emps. Ass'n v. Sun Carriers, Inc.*, 960 F.2d 1401, 1404–05 (9th Cir. 1991) (holding that claims for breach of implied covenant of good faith and fair dealing, interference with contractual relations, and interference with prospective economic advantage were preempted, while claims for fraud, misrepresentation, suppression of facts, and intentional inflection of emotional damage were not preempted).

Importantly, Ms. Sellar's claims, particularly those brought under the WLAD, are nonnegotiable, substantive rights under Washington law. The Zoo makes no arguments to the contrary. Indeed, the Ninth Circuit has specifically held that rights established by the WLAD are non-negotiable and separate from a CBA. *See Humble v. Boeing Co.*, 305 F.3d 1004, 1009 (9th Cir. 2002) (noting plaintiff need not rely on CBA to enforce the non-negotiable but parallel, independent, and "more extensive" rights to reasonable accommodation under WLAD); *Downey*

*v. Intalco Aluminum Corp.*, No. C05-2143, 2006 WL 8454987, at *3 (W.D. Wash. May 3, 2006) ("The Ninth Circuit has already held that the rights secured by the WLAD are nonnegotiable and separate from any parallel rights that could be provided by a CBA."). Courts have also found that a claim for wrongful termination in violation of Washington's public policy is a nonnegotiable right independent of a CBA. *See McFarland v. BNSF Railway Co.*, No. C16-5024, 2016 WL 10515857, at *3 (E.D. Wash. May 5, 2016) ("Washington's public policy against discharging an employee for protected activity is a substantive protection provided by Washington state tort law, which is separate from any rights provided by the CBA."); *Wilson v. City of Monroe*, 943 P.2d 1134, 1136 (Wash. Ct. App. 1997) ("Wilson's right to be free from wrongful termination in contravention of public policy . . . is . . . a nonnegotiable right.").[3] These claims do not require, or otherwise necessarily implicate, any labor contract.

Second, the Court proceeds to look to whether Ms. Sellar's claims are substantially dependent on the CBA. The Zoo repeatedly insists that Ms. Sellar's claims "require interpretation" of the CBA at issue. *See, e.g.*, Dkt. No. 12 at 1, 2, 11, 13. But, as Ms. Sellar points out and as borne out by the Court's own review of the CBA in its entirety, there is no provision of the CBA that *must* be interpreted to resolve Ms. Sellar's claims. This is fatal to the Zoo's position, as the Zoo holds the burden of showing that removal was proper.

The Parties do not dispute that Ms. Sellar's employment with the Zoo was governed by a CBA, that the Zoo had authority to change Ms. Sellar's work schedule and assignments, and that Ms. Sellar was required to and did pursue a grievance process through her union under the CBA. *See, e.g.*, Dkt. No. 9 at 2; Dkt. No. 13 at 5–6. But these are underlying background facts that are

---

[3] Neither Party addresses whether the PFMLA claim is a right distinct from any rights arising out of the CBA. Indeed, the only time Ms. Sellar's PFMLA claim is discussed with any specificity in the briefing is under the second prong of the analysis. *See* Dkt. No. 12 at 12–13. The Court is not aware of any case law resolving this issue, but in any case, Defendant does not seem to dispute that the PFMLA confers a right on its own, separately from the CBA.

ORDER OF REMAND - 9

not determinative of Ms. Sellar's claims. Determining whether the Zoo undertook discriminatory or retaliatory actions will, instead, likely focus on "purely factual questions pertain[ing] to . . . the conduct and motivation" of the Zoo, not disputed terms of the CBA. *See, e.g.*, *Milne Emps. Ass'n*, 960 F.2d at 1408 (alterations in original) (quoting *Lingle*, 486 U.S. at 407) (holding fraud-related claims were not preempted); *see also Russell v. United Ass'n of Journeymen & Apprentices of the Plumbing & Pipefitting Indus. of the U.S. & Can.*, No. C10-581, 2011 WL 13354076, at *4 (W.D. Wash. Feb. 15, 2011) (finding alleged violations of labor contracts "simply serve as context for plaintiff's complaint," without triggering preemption).

Indeed, courts have repeatedly and specifically found that state employment discrimination claims, including those arising under WLAD, are not preempted by Section 301. *See, e.g.*, *Lingle*, 486 U.S. at 410 (referring approvingly to lower court's recognition that Section 301 does not preempt state anti-discrimination laws); *Matson*, 840 F.3d at 1134 ("The multi-factor, fact-based inquiry required to decide Matson's hostile environment claim could be conducted without interpreting any provision of the CBA."); *Humble*, 305 F.3d at 1011 (holding reasonable accommodation claim under WLAD was not preempted); *Ku v. Argent Hotel Mgmt., LLC*, No. C20-5026, 2020 WL 5836506, at *4 (N.D. Cal. Oct. 1, 2020) ("Section 301 does not preempt discrimination claims and retaliation claims, even if it is necessary to refer to the CBA to determine the terms and conditions of employment."). Courts have reached similar conclusions regarding claims of wrongful discharge as a violation of state public policy, including where allegedly discriminatory conduct occurred. *See, e.g.*, *Chmiel*, 873 F.2d at 1286 (holding wrongful discharge claim under California public policy for age-based discrimination was not preempted); *Russell*, 2011 WL 13354076, at *3–4 (comparing to wrongful discharge claims under California public policy and similarly finding no preemption of wrongful discharge claim under Washington public policy).

ORDER OF REMAND - 10

This is not to say that these state law claims *always* escape Section 301 preemption. But the Zoo fails to show that these claims are preempted here. Revealingly, the Zoo's arguments—which are confusing at times—often rely on pointing to the frequency of Ms. Sellar's references to the CBA and her grievance proceeding. But referencing a CBA does not equate to interpreting a CBA. *See, e.g.*, *Shields v. Andeavor Logistics LP*, No. C19-4995, 2019 WL 3453202, at *2 (C.D. Cal. July 31, 2019) ("Defendants confuse the difference between *reference to* a CBA and *interpretation of* a CBA." (emphases in the original)). For example, the Zoo lists Ms. Sellar's references to the grievance procedure that occurred in accordance with the CBA to support the argument that preemption is warranted. *See, e.g.*, Dkt. No. 12 at 5 ("[S]he repeatedly *references* her union grievance . . . ." (emphasis added)); *id.* at 6 ("Plaintiff's Complaint *acknowledges* that she filed a grievance . . . [,] Plaintiff's Complaint *cites* Defendant's denial of her grievance . . . [,] Plaintiff's Complaint not only *cites* her grievance . . . , but *lists* Defendant's denial of this grievance . . . ." (emphases added)).[4] This does not create "substantial dependence" on the CBA. Ms. Sellar's acknowledgment of the grievance process that occurred is incidental to her claims and does not necessitate the interpretation of the CBA. Ms. Sellar also does not dispute the Zoo's right under the CBA to change her work hours or assignments, hire or promote its employees, and terminate employment. *See* Dkt. No. 9 at 2 ("[Plaintiff] is not . . . alleging . . . Defendant did not have the power to take the adverse actions it took against her under the CBA."). *Cf. Garcia*, 993 F.3d at 765 (noting that mere references and citations to a CBA do not trigger preemption).

Finally, although the Zoo acknowledges that preemption cannot arise out of a *defense* requiring interpretation of the CBA (Dkt. No. 12 at 4), it nonetheless seemingly grounds many of

---

[4] Another illustrative example is the Zoo's references to the CBA's provisions on hiring/promotion and disciplinary procedures. *See* Dkt. No. 12 at 13 ("Plaintiff's allegations that she was denied a promotion, and that she was unlawfully counseled/disciplined, require interpretation of these provisions." (citations omitted)).

its arguments on anticipated defenses to Ms. Sellar's claims—such as whether the Zoo had legitimate nondiscriminatory reasons for its general conduct (*id.* at 9–11), whether Ms. Sellar's grievance denial was justifiably based on procedural requirements under the CBA (*id.* at 13–14), or whether there was "just cause" for any constructive discharge that occurred (*id.* at 14–16). These arguments are improperly based on defenses. *See, e.g.*, *Burnside*, 491 F.3d at 1060 ("The [Supreme] Court also has made clear that reliance on the CBA as an aspect of a defense is not enough . . . ."); *see also Martinez v. Kaiser Found. Hosps.*, No. C12-1824, 2012 WL 2598165, at *4 (N.D. Cal. July 5, 2012) (finding no reliance on the CBA where defendant was essentially arguing it had a legitimate nondiscriminatory reason, *i.e.*, "just cause," for its conduct, which was impermissible basis for preemption). In any case, the Court must re-emphasize that these issues—essentially examining whether the Zoo's conduct was justifiable—are fact-specific inquiries that do not depend on the interpretation of the CBA.[5] *See, e.g.*, *Ku*, 2020 WL 5836506, at *4 ("The claims here turn on resolution of the employer's motives, not on an interpretation of the CBA (even if those terms identify the terms of employment).").

The cases that the Zoo rely on do not persuade the Court otherwise. Tellingly, many of the Ninth Circuit decisions that the Zoo relies on—such as *Stallcop* (1987),[6] *Young* (1987),[7] and *Audette* (1989)[8]—predate significant Ninth Circuit case law, such as *Cramer* (2001), *Burnside* (2007), and *Curtis* (2019). The Zoo also cites *Kobold*, a 2016 decision of the Ninth Circuit that addressed three separate cases at once. 832 F.3d 1024. But *Kobold* is easily distinguishable: *none*

---

[5] Included in this category of fact-specific issues that do not depend on the CBA are determinations of whether an adverse employment action occurred (Dkt. No. 12 at 11–12) or whether Ms. Sellar's employment conditions were so intolerable that her departure was a constructive discharge (*id.* at 13), two other issues the Zoo cites.

[6] *Stallcop v. Kaiser Found. Hosps.*, 820 F.2d 1044 (9th Cir. 1987).

[7] *Young v. Anthony's Fish Grottos, Inc.*, 830 F.2d 993 (9th Cir. 1987).

[8] *Audette v. Int'l Longshoremen's & Warehousemen's Union*, 195 F.3d 1107 (9th Cir. 1999).

ORDER OF REMAND - 12

of the claims that were preempted by Section 301 in *Kobold* resemble Ms. Sellar's claims. *See id.* at 1035–36 (statutory claim to recover wages); *id.* at 1041 (claim of money had and received); *id.* at 1044, 1047 (claims of intentional interference with economic relations and contract, breach of contract, and breach of the duty of good faith).

In short, the Zoo's repeated insistence that Ms. Sellar's claims are inseparable from the CBA (*see, e.g.*, Dkt. No. 12 at 11) is merely a "creative linkage" asserted between the subject matter of Ms. Sellar's claims and the CBA at issue that fails to "reach a reasonable level of credibility" that Ms. Sellar's claims substantially depend on the CBA. *See Cramer*, 255 F.3d at 691–92. That the CBA governing Ms. Sellar's employment references her right to be free of discrimination, for example, does not convert Ms. Sellar's state law claims into federal claims. *See id.* at 690 (noting that a CBA's reference to the state substantive right at issue does not result in preemption); *Shields*, 2019 WL 3453202, at *1 ("[J]ust because a CBA provides a remedy or duty related to a situation that is *also* directly regulated by non-negotiable state law does not mean the employee is limited to a claim based on the CBA." (quoting *Humble*, 305 F.3d at 1009)). Nor, as already discussed, does the "just cause" protection in the CBA convert Ms. Sellar's claims into one arising out of or substantially dependent on the CBA. Indeed, to do so would result in the preemption of virtually all discrimination claims. *See, e.g.*, *Martinez*, 2012 WL 2598165, at *4 ("Otherwise, virtually every claim of discrimination in regard to . . . rights under a CBA would be preempted . . . .").

As the Supreme Court has said, "the plaintiff is the master of the complaint, . . . [and] the plaintiff may, by eschewing claims based on federal law, choose to have the cause heard in state court." *Caterpillar Inc.*, 482 U.S. at 98–99. It is only when the plaintiff "invokes a right created by a collective-bargaining agreement" that the plaintiff's claim "must be regarded as a federal claim, and removal is at the defendant's option." *Id.* at 99. "But a *defendant* cannot, merely by

ORDER OF REMAND - 13

injecting a federal question into an action that asserts what is plainly a state-law claim, transform the action into one arising under federal law, thereby selecting the forum in which the claim shall be litigated." *Id.* (emphasis in original). Ms. Sellar's Complaint does not allege that the Zoo's actions breached any CBA or otherwise assert a right arising out of the CBA; nor does the Complaint allege claims that require the interpretation of the CBA. The Zoo's attempts to transform Ms. Sellar's action into one arising under federal law does not succeed.

Accordingly, the Court finds that it lacks subject matter jurisdiction over this matter and must remand this case to King County Superior Court. The Court has considered the Zoo's remaining arguments and finds them unavailing or moot.

**B.     Fees and Costs**

Ms. Sellar seeks to recover attorney fees and costs if she succeeds in remanding this case back to state court. Dkt. No. 9 at 13. The Zoo opposes. Dkt. No. 12 at 18. "An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). A court may make such an award "where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141 (2005).

The Zoo did not lack an objectively reasonable basis to seek removal. Section 301 preemption is a large body of case law that remains confusing. *See Kobold*, 832 F.3d at 1031 ("As this court has observed more than once, although § 301 preemption questions arise fairly frequently, '[f]amiliarity . . . has not bred facility.'" (alteration in original) (quoting *Cramer*, 255 F.3d at 689)); *Cramer*, 255 F.3d at 691 (noting the "analytical thicket" of Section 301 preemption law). While this case does not approach the line of preemption as closely as many other cases the Zoo relies on, the Zoo's arguments were not without support in the case law and were not frivolous. The Court therefore declines to award fees and costs.

## IV.    CONCLUSION

For the foregoing reasons, the Court GRANTS the motion to remand (Dkt. No. 9) and REMANDS this action to King County Superior Court. Plaintiff's request to award fees and costs in the motion to remand (Dkt. No. 9) is DENIED.

Dated this 23rd day of August 2023.

Tana Lin
United States District Judge